## A07A1092. LOITEN v. LOITEN.
### (655 SE2d 265)

ADAMS, Judge.

Andrew Loiten appeals from the trial court's order granting a petition for a temporary protective order filed by his wife Carolyn Loiten, from whom he is separated.

Carolyn Loiten,[1] who is now a Georgia resident, originally initiated divorce proceedings in Alabama, where Andrew Loiten resides. But she filed her petition for a protective order in Clayton County Superior Court under Georgia's Family Violence Act, OCGA § 19-13-1 et seq. (the "Act") asserting that jurisdiction was proper in this state because Andrew Loiten had committed the acts at issue in Clayton County. OCGA § 19-13-2 (b). The trial court entered a temporary ex parte order June 7, 2006, and on July 1, 2006, Andrew Loiten was served in Alabama with a copy of that order, as well as a June 30, 2006 "Order Extending Temporary Protective Order Pending Service," which directed him to appear in Clayton County Superior Court on July 5, 2006. Andrew Loiten asserts, however, that he was not served with a copy of his wife's petition seeking the protective order.

Andrew Loiten obtained Georgia counsel and appeared at the July 5 hearing, after filing a motion to dismiss alleging insufficient notice and lack of service because he was not served with the petition

---

[1] We note that Carolyn Loiten represented herself pro se at the motion hearing and did not file an appellate brief in this matter.

setting out the allegations against him. At the hearing, the trial court asked Andrew Loiten to waive service of the petition, but he refused. The judge then indicated that he would be served in court, but Loiten's attorney argued that Georgia law prohibited such service. The trial judge acknowledged that this was a correct statement of the law, but directed that Loiten be served when he left the court. His attorney objected stating that service under those circumstances was also prohibited under the authority of *Steelman v. Fowler*, 234 Ga. 706, 707 (1) (217 SE2d 285) (1975). In response, the trial court reset the hearing to July 7, 2006 to take the motion to dismiss under advisement. The sheriff served Loiten with a copy of the petition in the parking lot of the courthouse as he left the hearing.

Andrew Loiten filed another motion to dismiss arguing, inter alia, that the service upon him in the parking lot was inadequate. At the July 7 hearing, the trial court announced that it would "tentatively deny" both motions to dismiss, but stated that the court would "reserve final ruling on this matter until the court has an opportunity to review it." The trial court then proceeded with the hearing, and granted Carolyn Loiten's petition, entering a one-year protective order.

Andrew Loiten filed a timely application for discretionary appeal of that order, which application was granted by this Court on September 6, 2006. Almost six months later, on January 2, 2007, the trial court entered a written order expressly denying Loiten's motions to dismiss. "As a general rule, in civil actions other than injunctions, a trial court, upon the filing of a notice of appeal, loses jurisdiction to modify or enforce a judgment which is the subject of the appeal during the period of supersedeas. See generally OCGA § 5-6-46." *Davis v. Harpagon Co.*, 281 Ga. 250, 253 (8) (637 SE2d 1) (2006). Although the trial court deemed its denial of Andrew Loiten's motions "tentative," the entry of the permanent protective order had the same effect as if the court had denied the motions outright, and this appeal encompasses that implicit ruling. But even if the trial court had retained jurisdiction to enter the January 2007 order, we cannot consider an order issued after the appeal was filed in this case. See *Bloomfield v. Bloomfield*, 282 Ga. 108, 112 (5) (646 SE2d 207) (2007).

1. Loiten first asserts that the trial court erred in denying his motions to dismiss on the ground that service was insufficient. Loiten acknowledges that in the first service attempt, he received a copy of the ex parte protective order and the order extending the ex parte order pending service, but denies that he was served with a copy of his wife's petition seeking the protective order. He asserted in his first motion that the failure to serve the petition rendered the sheriff's service insufficient and that it gave him inadequate notice.

While the Act contemplates the entry of ex parte protective orders, such orders are temporary only, and within ten days, the court must hold a hearing, during which the petitioner must prove the allegations of the petition "by a preponderance of the evidence as in other civil cases." OCGA § 19-13-3 (c). And the court may convert a temporary order into a longer or even a permanent order only after "notice to the respondent and after a hearing." OCGA § 19-13-4 (c). The Act is silent, however, as to the form of such notice or to the service procedures to be followed.[2]

Nevertheless, it is clear that the original service by the sheriff in this case was insufficient as the documents served on Andrew Loiten provided no notice of the allegations against him. Both the protective order and the order extending the protective order were merely form documents with no explanation of the underlying allegations. Service of the petition was necessary to put Loiten on notice of such allegations. Indeed, the trial judge's June 30 order postponed the hearing and extended the temporary protective order so that service of both the petition and the orders could be perfected. See also Handberg, Obtaining Protective Orders for Relief from Family Violence, 6 Ga. State Bar Journal 20, 22 (2000) (alleged perpetrator must be served with copy of rule nisi, verified petition and temporary protective order before hearing). Cf. *Moore v. Wilkerson*, 283 Ga. App. 340, 342-343 (641 SE2d 578) (2007) (" 'due process requires that we enforce a plaintiff's obligation to diligently pursue service to ensure fairness to all parties involved in a lawsuit' ") (citation omitted); *Duffy v. Lyles*, 281 Ga. App. 377, 378 (636 SE2d 91) (2006) (service requirements strictly applied " 'because notice is the very bedrock of due process' ") (citations omitted).

Although the trial court sought to rectify the deficiency in service by directing that Andrew Loiten be served as he left the July 5 hearing, Loiten contended in his second motion to dismiss that this service was also insufficient, relying upon the long-standing rule that

> a suitor or a witness in attendance upon the trial of any case in court, is privileged from arrest under any civil process, and is exempted from the service of any writ or summons upon him or them while in attendance upon such court, or in going to or returning therefrom.

---

[2] Moreover, proceedings under the Act are not subject to the service provisions of the Georgia Civil Practice Act, OCGA § 9-11-1 et seq., although service in accordance with the CPA would certainly be sufficient to effect service under the Act. See *Carroll v. State*, 224 Ga. App. 543, 546 (1) (481 SE2d 562) (1997); 1995 Op. Atty. Gen. No. U95-7.

(Citations and punctuation omitted.) *Steelman*, 234 Ga. at 707 (1). See also *Turner v. McGee*, 217 Ga. 769, 773 (2) (125 SE2d 36) (1962); *Thornton v. American Writing Machine Co.*, 83 Ga. 288, 290 (9 SE 679) (1889).

Over time, Georgia courts have recognized several exceptions to this general rule, holding that it does not apply to criminal defendants[3] or nonresidents, who are in this state temporarily "for some purpose other than to appear in court as a party or witness." (Citation omitted.) *Ausbon v. Ausbon*, 131 Ga. App. 530, 531 (206 SE2d 546) (1974). In addition, the Supreme Court of Georgia has indicated that the rule was intended to insulate "a party in attendance upon the trial of a case from service of process in a *new action*." (Emphasis supplied.) *Blalock v. Blalock*, 247 Ga. 548, 550 (1) (277 SE2d 655) (1981). Therefore, the court held that the rule did not apply to protect a nonresident wife from being served with a motion seeking modification of visitation rights while she was in the state to attend a hearing on a motion for contempt she filed against her ex-husband, a Georgia resident. The court reached this conclusion because Georgia law allowed a motion for modification to be filed in an existing contempt proceeding.[4] Thus, the motion was not part of a new or separate action, but rather was a filing in the very action that brought the wife to Georgia, and the court reasoned that the safeguards inherent in the rule were not triggered. Id.

The two established exceptions clearly have no application here, and we also find *Blalock* distinguishable. In *Blalock*, the wife was protesting service of a document filed in connection with an existing action. Here, the service at issue was the initial service, providing Andrew Loiten the first notice of an action against him. Although the matter had previously proceeded ex parte, the action was new to Loiten at the time of the attempted service. Thus, the *Steelman* rule applies, and Loiten could not be served while he was attending the noticed hearings in this case or when he was going to or from those proceedings.

The attempt to serve Andrew Loiten in the courthouse parking lot, therefore, was insufficient to confer jurisdiction over his person. *Steelman*, 234 Ga. at 707 (1). While Loiten personally appeared with

---

[3] But nonresident criminal defendants who voluntarily appear in Georgia courts are immune from service under the rule. *White v. Henry*, 232 Ga. 64, 67 (205 SE2d 206) (1974); Steven Goldman, The Georgia Domestic Relations Long-Arm Statute: An Appraisal, 18 Ga. L. Rev. 691, 700, n. 47 (1984).

[4] Although the procedural issues in *Steelman* were virtually identical, at the time *Steelman* was decided, Georgia law required that motions for modification of visitation rights be filed in a separate action from an existing contempt proceeding. *Blalock*, 247 Ga. at 549-550 (1).

his counsel at the noticed hearings, he raised the issue of insufficiency of service at both hearings and proceeded with the merits only after his motions to dismiss were "tentatively" denied. Thus, his appearances were made subject to the motions, and he cannot be deemed to have waived the service issue for appeal. See *Weems v. Weems*, 225 Ga. 154, 155 (2) (166 SE2d 352) (1969); OCGA § 9-11-12 (h). Compare *Jones v. Van Horn*, 283 Ga. App. 144, 146-147 (2) (640 SE2d 712) (2006) (service issue waived where defendant personally appeared and failed to preserve service issue on the record).

Accordingly, the trial court erred in denying Loiten's motion to dismiss, and we reverse.

2. In light of our holding in Division 1 above, we need not address Loiten's remaining enumerations of error.

*Judgment reversed. Andrews, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 29, 2007.

*Deanna H. Powell*, for appellant.
Carolyn Loiten, *pro se*.

